(24 P.3d 750)
No. 84,158

STATE OF KANSAS, *Appellee*, v. SCOTTY R. DONHAM, *Appellant*.

Opinion filed May 11, 2001.

*Patrick H. Dunn*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Jan Satterfield*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., GREEN and BEIER, JJ.

GREEN, J.: Scotty R. Donham appeals his convictions of 90 counts of sexual exploitation of a child. On appeal, Donham argues (1) that his convictions are multiplicitous; (2) that he was denied the right to a unanimous jury verdict; (3) that the trial court erred in failing to give the multiple counts jury instruction; (4) that the trial court erred in instructing on the definition of possession; (5) that the trial court created structural error when it instructed solely using the current version of the sexual exploitation of a child statute; (6) that the sexual exploitation of a child statute is facially overbroad in violation of the First Amendment; and (7) that cumulative trial error substantially prejudiced his right to a fair trial. We reverse and remand for a new trial.

After serving a search warrant at Donham's residence on September 25, 1998, the police discovered a computer and floppy disks containing sexually explicit images of children. The police learned about the images from John McCandless, Donham's former roommate. While McCandless was in jail on a probation violation, he told police that Donham had child pornography stored on his computer and floppy disks. According to McCandless, Donham showed him pornographic images on the computer beginning with adult pornography and later more bizarre images including child pornography.

The computer and floppy disks seized from Donham's residence were analyzed by a forensic examiner. The examiner discovered that most of the files were deleted before the computer and floppy disks were seized. However, the examiner was able to forensically

access or recreate the deleted images contained on 18 floppy disks. In addition, the examiner was able to determine the dates the images were created (received via Internet Relay Chat), modified (altered or changed in some fashion), and last accessed (viewed or moved to another location). The images were created as early as December 1997 and were accessed as late as September 1998.

Donham was originally charged with 100 counts of sexual exploitation of a child based on 100 sexually explicit images of children stored on 18 floppy disks. The State later amended the complaint, reducing the number of charges to 90 counts of sexual exploitation of a child.

During his jury trial, Donham's theory of defense was that he was not the individual who downloaded and accessed the child pornography. Donham stipulated that the images depicted children under the age of 18. The State presented to the jury 100 sexually explicit images that were stored on 18 floppy disks.

The jury found Donham guilty of 90 counts of sexual exploitation of a child. He was sentenced to 52 months' imprisonment on count one and 32 months' imprisonment on count two, to run consecutive to count one. The sentences for the remaining counts were to be served concurrently with those for the first two convictions.

## Multiplicity

Donham first contends that his convictions are multiplicitous because each floppy disk, rather than each image, should constitute one count of sexual exploitation of a child. Donham was convicted of 90 counts of sexual exploitation of a child based on images that were retrieved from 18 floppy disks.

Whether the charges filed against Donham are multiplicitous is a question of law over which this court's scope of review is unlimited. See *State v. Thomas*, 24 Kan. App. 2d 734, 737, 953 P.2d 1043 (1998). Multiplicity involves "the charging of a single offense in several counts of a complaint or information." *State v. Freeman*, 236 Kan. 274, 280, 689 P.2d 885 (1984). "The concern with multiplicity is that it creates the potential for multiple punishments for the same offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and

section 10 of the Kansas Bill of Rights." *State v. Edwards*, 250 Kan. 320, 329, 826 P.2d 1355 (1992).

Kansas appellate courts have not previously addressed multiplicity in the context of convictions of sexual exploitation of a child. Accordingly, this appeal requires the court to construe the meaning of the sexual exploitation of a child statute and determine whether the State may charge a defendant for each sexually explicit image of a child contained on a floppy disk or whether the charges must be based on the number of floppy disks. Interpretation of a statute is a question of law, and this court's review is unlimited. *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

K.S.A. 2000 Supp. 21-3516(a)(2) prohibits the possession of

"any film, photograph, negative, slide, book, magazine or other printed or visual medium or any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk in which a visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct . . . ."

Only one previous case has construed the types of materials prohibited by the Kansas sexual exploitation of a child statute. In *State v. Peltier*, 249 Kan. 415, 819 P.2d 628 (1991), *cert. denied* 505 U.S. 1207 (1992), Peltier was convicted of one count of sexual exploitation of a child based on possession of undeveloped photographic film. Eleven of the photographs printed from the film were introduced at trial, presumably because they constituted sexually explicit images of a child. On appeal, the *Peltier* court rejected the argument that the term "film" as used in the statute referred to a moving picture and not undeveloped still photographic film. 249 Kan. at 429-30. Significantly, although not an issue on appeal, Peltier was convicted of only 1 count of sexual exploitation of a child based on his possession of the roll of film, rather than 11 counts based on the number of sexually explicit exposures contained on the film.

Multiplicity of sexual exploitation of a minor charges was addressed in *State v. Valdez*, 182 Ariz. App. 165, 894 P.2d 708 (1994).

In that case, Valdez delivered a roll of film to a store for development. After the film was processed, a store employee alerted police that the photographs might constitute child pornography, and the photographs were seized before Valdez returned to the store to claim them. Valdez was convicted of, among other offenses, five counts of sexual exploitation of a minor based on five pictures developed from the roll of film. The *Valdez* court found that possession of one roll of undeveloped film constituted possession of one visual or print medium and since Valdez possessed only one visual or print medium, four of the five convictions of sexual exploitation of a minor were multiplicitous. 182 Ariz. App. at 170. See *State v. Huckins*, 66 Wash. App. 213, 221, 836 P.2d 230 (1992) ("Possessing a single publication containing [several depictions of child pornography] cannot properly be characterized as a series of several distinct acts. The act of possessing such a publication is a single act.").

Here, the State charged Donham with 90 counts of sexual exploitation of a child based on possession of "photograph[s], electronic image[s], computer hardware, software, floppy disk[s] or computer generated image[s]." However, in considering the six different ways the State alleged that Donham violated K.S.A. 2000 Supp. 21-3516(a)(2), the statute does not support 90 charges. First, the images retrieved from the floppy disks were not photographs because they were not printed onto paper through a photosynthesis process. Second, the sexual exploitation of a child statute does not list possession of electronic images as a means of violating the statute. Third, the images do not constitute computer hardware because the images are not computer equipment or components. In addition, the State did not present evidence at Donham's trial showing that the images were retrieved from computer hardware. Fourth, the images do not constitute software because the images are not programs or procedures associated with a computer system. Fifth, the images do not constitute computer-generated images. The term "computer-generated image" as used in the sexual exploitation of a child statute should be interpreted as encompassing any sexually explicit image of a child that is graphically made or created by using a computer. However, there was no evidence

presented at Donham's trial indicating that any of the images retrieved from the floppy disks were graphically made or created by using a computer. Moreover, the evidence presented by the State showed scenes of real children.

The only other way to justify charging Donham with 90 counts of sexual exploitation of a child is to interpret the statute as prohibiting possession of each sexually explicit image of a child stored on or retrieved from a floppy disk. Rules of statutory construction, however, prevent such an interpretation because reading the statute to prohibit possession of each sexually explicit image of a child retrieved from a floppy disk would be rewriting the statute to add a new element. " 'The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be read so as to add that which is not readily found therein.' [Citation omitted.]" *In re Tax Appeal of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, 868, 909 P.2d 673 (1995). Moreover, "criminal statutes must be strictly construed in favor of the accused." *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998). Nevertheless, criminal statutes are not to be construed so strictly as to defeat the clear intention of the legislature. *State v. Roderick*, 259 Kan. 107, 110, 911 P.2d 159 (1996).

If the legislature had intended to criminalize possession of each sexually explicit image of a child contained on a floppy disk, the legislature would have included language such as possession of any image stored on or retrieved from a floppy disk as a means of violating the statute. This language is missing from K.S.A. 2000 Supp. 21-3516(a)(2).

As a general rule, a single wrongful act may not furnish the basis for more than one criminal prosecution. See *State v. Perry*, 266 Kan. 224, Syl. ¶ 6, 968 P.2d 674 (1998). Under K.S.A. 2000 Supp. 21-3516(a)(2), possessing a floppy disk containing one or more images of child pornography is a single act. As a result, possessing a floppy disk containing two or more sexually explicit images of a child cannot be divided into two or more distinct acts.

"When a statute is plain and unambiguous, we must give effect to the intention of the legislature, rather than determine what the law should or should not be." *Roderick*, 259 Kan. at 110. The plain

language of the sexual exploitation of a child statute prohibits possession of any floppy disk that contains a sexually explicit image of a child. Because the plain language of the statute does not criminalize possession of each sexually explicit image of a child retrieved from a floppy disk, the convictions are multiplicitous.

## Multiple Acts

Next, Donham contends he was denied the right to a unanimous jury verdict for each alleged criminal act because the State introduced 100 allegedly sexually explicit images of children retrieved from the floppy disks but charged him with only 90 counts of sexual exploitation of a child. The State, on the other hand, claims that even though the jury was shown 100 images using a computer power point demonstration, only 90 images were submitted to the jury for consideration. The State insists that no questionable images as to whether an individual depicted in the image was underage were admitted into evidence to form the basis of the individual counts or for consideration by the jury in reaching a verdict.

State's exhibit 22 consists of two sets of images with each set containing substantially the same images. The first set of images is a printed copy of the computer power point demonstration that was shown to the jury and includes 100 different images that are printed five or six per page. The second set of images consists of over 100 images printed one per page, including 99 different images and several duplicates of those images. One image is missing from the second set of images. If that image was included, then there would be 100 different images in the second set which are the same 100 images included in the first set.

The images are not individually labeled as separate exhibits but instead are merely identified on the first page of the first set of images as State's exhibit 22. Moreover, there is no indication that some of the images included in State's exhibit 22 were not admitted into evidence. Accordingly, the record does not support the State's contention that only 90 different images were admitted into evidence as State's exhibit 22. Finally, during oral argument, the State conceded that exhibit 22, containing the 100 different images, was admitted into evidence. Nevertheless, the State maintains that the

mistake in admitting all 100 different images instead of only 90 different images was harmless. We disagree.

In multiple acts cases,

> " 'the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.' " *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]).

Several recent cases have addressed jury unanimity in multiple acts cases. For example, in *State v. Kinmon*, 26 Kan. App. 2d 677, 678-79, 995 P.2d 876 (1999), the jury could have found Kinmon guilty of possession of drug paraphernalia based on either possession of a cigarette case or possession of a key holder. The trial court failed to instruct the jurors that all of them had to agree that the same underlying criminal act had to be proved beyond a reasonable doubt. On appeal, the *Kinmon* court noted that "[i]n voting to convict Kinmon, different jurors could have relied on different acts." 26 Kan. App. 2d at 679. Although Kinmon did not request the appropriate instruction, the court relied on language in *Timley* and found clear error because there was no assurance that the verdict was unanimous. 26 Kan. App. 2d at 678-79. See *State v. Wellborn*, 27 Kan. App. 2d 393, 4 P.3d 1178, *rev. denied* 269 Kan. 940 (2000) (reversing convictions of rape and aggravated indecent liberties with a child and remanding for a new trial based on trial court's failure to instruct the jury that it must unanimously agree as to the specific act supporting the conviction for each count); *Crutcher v. State*, 27 Kan. App. 2d 674, 8 P.3d 1, *rev. denied* 268 Kan. 885 (1999) (holding trial court's failure to give unanimity instruction violated defendant's right to unanimous verdict); *State v. Barber*, 26 Kan. App. 2d 330, 988 P.2d 250 (1999) (reversing conviction of criminal possession of a firearm and remanding for a new trial based on trial court's failure to instruct the jury that it must unanimously agree that the same criminal act was proved beyond a reasonable doubt).

Here, it is impossible to know which images constituted the basis of Donham's convictions because he was convicted of 90 counts based on 100 different images admitted into evidence. Even if the jury believed at least 90 images violated the sexual exploitation of a child statute, there is no way to determine which images were utilized by the jury in convicting Donham. The trial court's failure to give a unanimity instruction is especially problematic because the 90 verdict forms did not specify to which image each form referred.

When faced with allegations of multiple acts of sexual exploitation of a child based on possession of sexually explicit materials, the State may charge multiple counts but must elect the medium for which adequate proof has been presented or give a unanimity instruction such as PIK Crim. 3d 68.09-B (1999 Supp.). No amount of analysis would ever permit this court to say that the jury unanimously agreed to the underlying acts supporting each of the 90 counts. Under these circumstances, the trial court's failure to give a multiple acts instruction constitutes reversible error, requiring that Donham's convictions be set aside.

Although we are reversing and remanding this case for a new trial, we feel compelled to address some of Donham's other contentions. We hope by addressing these other contentions, it will help the parties in the retrial of this case.

### Jury Instruction—Multiple Counts

Donham next asserts that the trial court erred in failing to give PIK Crim. 3d 68.07 (1998 Supp.), which instructs the jury to decide each charge separately. Donham concedes that he failed to request the instruction at trial but argues that the trial court's failure to give the instruction allowed the jury an opportunity to convict him of all 90 counts based on a finding that the State only proved one or several of the charges.

The standard of review of this issue was noted in *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997):

"[N]o party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her

objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414. Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred."

The trial court provided Donham's jury with one elements instruction to cover all 90 counts:

"In Counts One through Ninety, the defendant is charged with the crime of sexual exploitation of a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant, Scotty Donham, did then and there unlawfully, willfully, and feloniously possess a photograph, computer hardware, software, floppy disk, or computer-generated image, in which a visual depiction of a child under 18 years of age is shown engaging in sexually explicit conduct; and

"2. That the defendant did so with the intent to arouse and satisfy the sexual desires or appeal to the prurient interest of the defendant, the child, or another, and

"3. That this act occurred on or about the 4th day of September, 1997 through the 22nd day of September, 1998, in Butler County, Kansas."

In addition to this instruction, the jury was given 90 verdict forms, one for each count. However, the verdict forms failed to specify to which image the count referred.

Donham contends that based on the single elements instruction and the lack of specificity in the verdict forms, the jury could have found each element was satisfied for one image and, based on that finding alone, could have convicted him of the remaining 89 counts. Donham insists that such a problem could have been avoided had the trial court given the multiple counts jury instruction, which provides:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the Presiding Juror." PIK Crim. 3d 68.07 (1998 Supp.).

Our Supreme Court has addressed the failure to give a multiple counts jury instruction only a few times. In each case, the court found that although the trial court erred in failing to give the mul-

tiple counts instruction, the errors did not prejudice the defendants. For example, in *State v. Cameron & Bentley*, 216 Kan. 644, 533 P.2d 1255 (1975), the trial court gave elements instructions that combined charges of aggravated robbery committed against different victims. *Cameron* held that the jury was not misled into believing a finding of guilty on one count of robbery dictated a finding of guilty on the other robbery counts and, as a result, the defendants were not prejudiced. 216 Kan. at 650-51. See *State v. Mitchell*, 262 Kan. 687, 696-97, 942 P.2d 1 (1997) (holding the defendant was not prejudiced by the trial court's failure to give the multiple counts instruction because the jury received separate verdict forms and separate instructions for each count); *State v. Kelly*, 262 Kan. 755, 764-65, 942 P.2d 579 (1997) (holding the trial court's failure to give the multiple counts instruction was harmless error because the jury was given separate verdict forms and it was clear that the jury weighed the evidence in reaching the verdicts).

Here, although the trial court erred in failing to give the multiple counts jury instruction, the error was harmless. Donham was not prejudiced by the trial court's failure to give the instruction because it is unlikely the jury was misled into believing a finding of guilty on one count dictated a finding of guilty on the additional 89 counts. Moreover, the jury was given separate verdict forms for each count. As a result, the trial court's failure to give the multiple counts jury instruction constitutes harmless error.

Nevertheless, when this case is retried, the trial court should give a multiple counts instruction. We further note that it would be helpful to appellate review if the verdict form specifies to which disk each form refers. Finally, under the notes section of PIK Crim. 3d 68.08, the PIK Committee recommends that when a defendant is charged with multiple counts in the same information, a jury should be submitted a separate verdict form specifying the crime charged as to each count of the information.

## Jury Instructions

Donham next argues that the trial court created structural error when it instructed on the elements of the current version of the sexual exploitation of a child statute when some of the counts were

allegedly committed before the current version became effective. In the amended information, the State alleged that the offenses were committed "on or about September 4, 1997, through September 22, 1998." This time frame was based on the dates the images were modified and last accessed.

Donham claims that because some of the images were not accessed after July 1, 1998, the date the current version of the statute became effective, the trial court should have instructed using the prior version of the statute as to offenses that occurred before July 1, 1998. Donham contends that because the 1998 amendments to the statute broadened the acts for which a defendant can be held liable, it is not possible to determine if the jury would have found him guilty under the earlier, more restrictive version of the statute had the trial court instructed using the previous version of the statute for those offenses committed before July 1, 1998. According to Donham, the jury instruction resulted in verdicts tainted by structural error.

Before the 1998 amendments became effective, the sexual exploitation of a child statute prohibited possession of material depicting a real child under 16 years of age engaged in sexually explicit conduct. K.S.A. 21-3516. The statute was amended in 1998 to broaden the range of prohibited materials by increasing the age requirement of the individual depicted in the sexually explicit material to under 18 years of age and omitting the requirement that the child be "real." As a result, the 1998 amendments altered the statute by adding children ages 16 and 17 to the class of victims covered by the statute.

This change in the age requirement impacts the instant case because the jury was instructed solely using the elements from the current version of the statute. Specifically, the jury was instructed that to convict Donham of sexual exploitation of a child, the State was required to prove, among other elements, that he possessed material "in which a visual depiction of a child *under 18 years of age* is shown engaging in sexually explicit conduct." (Emphasis added.)

The present case is unique in that the images were retrieved from floppy disks which stored the dates the images were last ac-

cessed. This is unlike other child pornography cases involving medium such as photographs or videotapes, because in those cases it is generally not possible to ascertain the dates when those medium were last viewed. Here, some of the images stored on the floppy disks were viewed only before July 1, 1998, based on the last-access dates associated with those images. Because certain images were not viewed after July 1, 1998, Donham claims that he did not possess the images when the 1998 amendments were effective and, as a result, the earlier, more restrictive version of the statute applies as to those counts. On the other hand, the State argued at oral argument that possessing material depicting a child engaged in sexually explicit conduct is a continuing offense.

K.S.A. 2000 Supp. 21-3106(9) provides that "[a]n offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." Stated another way, a continuing offense is committed "when the course of the prohibited conduct, or the accused's complicity in the crime, has terminated. To constitute a continuing offense, it must plainly appear in the statute defining such offense that there is a clear legislative intent to make the prohibited conduct a continuing offense." *State v. Palmer*, 248 Kan. 681, Syl. ¶ 1, 810 P.2d 734 (1991).

Kansas appellate courts have infrequently addressed whether an offense constitutes a continuing offense. In *State v. Jones*, 13 Kan. App. 2d 520, Syl. ¶¶ 2-3, 775 P.2d 183 (1989), the court held that the offenses of welfare fraud and theft of public assistance benefits are continuing offenses. The *Jones* court distinguished *State v. Gainer*, 227 Kan. 670, 674, 608 P.2d 968 (1980), which held that "theft by obtaining or exerting unauthorized control over property with intent to deprive the owner permanently of the possession, use or benefit of his property . . . is not a continuing offense." *Jones* noted that welfare fraud and theft of public assistance benefits involved the wrongful taking of benefits on a monthly basis over a period of time, unlike the theft in *Gainer*, which involved a single taking. 13 Kan. App. 2d at 524-25. See *Palmer*, 248 Kan. 681, Syl. ¶ 2 (holding neither theft nor conspiracy to commit theft

were continuing offenses); *State v. Cotner*, 87 Kan. 864, 877, 127 Pac. 1 (1912) (holding practicing medicine without a license is not a continuing offense because the statute penalizes each specific act of practicing medicine without a license).

Because sexual exploitation of a child committed by possessing material depicting a child engaged in sexually explicit conduct requires a specific "intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another," this crime is not a continuing offense. As a result, if the evidence shows in the retrial of this case that one or more of the 18 floppy disks were accessed only before July 1, 1998, the trial court should instruct the jury using the statute that was in effect before July 1, 1998, as to those disks.

### Constitutionality of K.S.A. 2000 Supp. 21-3516

Next, Donham maintains that K.S.A. 2000 Supp. 21-3516 is unconstitutional. Although we do not agree with Donham's argument, we determine that we need not reach this issue because we are reversing on other grounds. When there is a valid alternative ground for relief, an appellate court need not reach the constitutional challenges to a statute. *Rust v. Sullivan*, 500 U.S. 173, 207, 114 L. Ed. 2d 219, 111 S. Ct. 1759 (1991) (Blackman, J., dissenting); *International Ass'n of Machinists v. Street*, 367 U.S. 740, 749, 6 L. Ed. 2d 1141, 81 S. Ct. 1784 (1961).

### Definition of Possession and Cumulative Error Arguments

Finally, because we have granted a new trial on the jury unanimity issue, we need not address Donham's definition of possession and cumulative trial error arguments.

Reversed and remanded for a new trial.